IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

WYLIE C. CAGLE,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

Defendant.

Case No. 6:17-cv-00231-AA
**OPINION AND ORDER**

AIKEN, Judge:

Plaintiff Wylie C. Cagle, brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

## BACKGROUND

In March 2013, plaintiff applied for DIB and SSI. He alleged disability beginning September 10, 2008. In 1982, plaintiff had a traumatic injury in which his left hand was

completely severed; it was later surgically reattached. His disability application was based on several issues related to that injury (arthritis, weakness, and carpal tunnel syndrome in his left hand), as well as on sciatic nerve issues in his right leg, abdominal pain, chest pains, generalized pain, fatigue, depression, and prediabetes. Plaintiff's applications were denied initially and upon reconsideration. On July 22, 2015, plaintiff appeared at a hearing before an ALJ. At the hearing, plaintiff testified and was represented by an attorney. Through his attorney, plaintiff amended his disability onset date to May 18, 2013, his fiftieth birthday, and the day on which he was reclassified as an individual closely approaching advanced age under the Social Security regulations. A vocational expert also testified. The ALJ found plaintiff not disabled in a written decision issued September 25, 2015. After the Appeals Council denied review, plaintiff filed a complaint in this Court.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4); *id.* § 416.920(a)(4). At step one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since the alleged disability onset date. Tr. 21; 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *id.* §§ 416.920(a)(4)(i), (b). At step two, the ALJ found plaintiff had the following severe impairments: "osteoarthritis or degenerative joint disease; obesity; left carpal tunnel syndrome; and depression[.]" Tr. 21; 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *id.* §§ 416.920(a)(4)(ii), (c). The ALJ considered the record evidence of diabetes but concluded it was not a severe impairment because "[t]he overall record indicates that the claimant was not diagnosed with diabetes until February 2014, well after his amended onset date of disability, and once he was diagnosed he learned quickly to control his symptoms with diet, exercise and compliance with prescribed medication." Tr. 22.

At step three, the ALJ determined plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 23; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *id.* §§ 416.920(a)(4)(iii), (d). The ALJ found plaintiff retained the residual functional capacity ("RFC") to

perform less than light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is further limited to no more than occasional climbing, and no more than occasional pushing, pulling, handling, grasping and fingering with his left upper extremity. The claimant would also be limited to jobs where he has no more than occasional interaction with coworkers and the general public.

Tr. 25; 20 C.F.R. § 404.1520(e); *id.* § 416.920(e). At step four, the ALJ concluded plaintiff could not perform any of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f); *id.* §§ 416.920(a)(4)(iv), (f). At step five, the ALJ found that plaintiff could perform other jobs existing in significant numbers in the national economy, such as mold machine attendant and stenciler. Accordingly, the ALJ found plaintiff not disabled and denied his applications for benefits.

## DISCUSSION

Plaintiff contends that the Commissioner committed three harmful errors in evaluating his application for disability benefits. First, plaintiff argues that the post-hearing opinion of his treating physician, Molly Tveite, M.D., establishes that the ALJ's evaluation of plaintiff's RFC and conclusion at step five are not supported by substantial evidence. Second, plaintiff contends that the ALJ impermissibly gave little weight to his testimony about his symptoms without providing clear and convincing reasons for doing so. Finally, plaintiff avers that the ALJ erred in failing to deem his diabetic neuropathy a severe impairment at step two, leading to additional errors in evaluating plaintiff's RFC. Although I am unpersuaded by plaintiff's second and third arguments, I agree that remand is necessary to permit the ALJ to evaluate Dr. Tveite's opinion.

I.   *Dr. Tveite's Post-Hearing Opinion*

Plaintiff's primary argument on appeal is that the ALJ's ultimate disability determination is unsupported by substantial evidence in light of the post-hearing opinion of his treating physician, Dr. Tveite. On January 21, 2016, after the ALJ found plaintiff not disabled, Dr. Tveite completed a five page Medical Evaluation. Plaintiff submitted Dr. Tveite's opinion to the

Appeals Council. In its order denying review, the Appeals Council stated that it had "looked at" Dr. Tveite's opinion but that the new information was "about a later time" and thus "does not affect the decision about whether you were disabled beginning on or before September 25, 2015," the hearing date. Tr. 2. As an initial matter, the Appeals Council was incorrect about the period of time addressed by Dr. Tveite's opinion; although Dr. Tveite completed the evaluation post-hearing, she specifically stated in the opinion that the limitations she described had been present since she began treating plaintiff, in July 2013—just two months after the amended disability onset date.

The government argues that the Appeals Council's error on that point is harmless, however, because plaintiff has not shown either that the evidence is material to the disability decision or that there is good cause for plaintiff's failure to obtain an opinion from Dr. Tveite *before* the ALJ issued his written decision. The government locates the "good cause" requirement in the Social Security Act's judicial review provision, which provides, in relevant part, that when a court reviews a denial of Social Security disability benefits, "it may at any time order additional evidence to be taken before the Commissioner . . . , but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

Section 405(g) requires a plaintiff to show good cause for failure to present new evidence to the Commissioner before introducing that evidence in district court. But, contrary to the government's contention, it does not require a Social Security claimant to show good cause for failure to present new evidence to the ALJ before presenting it to the Appeals Council. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012). Indeed, the Social Security regulations state, without any reference to "good cause," that "[t]he Appeals Council will

consider all evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.976(b). Plaintiff is not required to show good cause for submitting Dr. Tveite's opinion after the hearing.

Materiality, by contrast, does matter. To be clear, my task is not to determine whether the Appeals Council violated the Social Security regulations in failing to deem Dr. Tveite's opinion material; federal courts lack jurisdiction to review non-final agency actions, including the Appeals Council's denial of a request for review. *Brewes*, 682 F.3d at 1161. Rather, I must determine whether the ALJ's decision—which became the final decision of the Commissioner when the Appeals Council denied review—is supported by substantial evidence "based on the record as a whole." *Id.* at 1162. The "record as a whole" includes any evidence submitted to the Appeals Council before the Commissioner makes her final disability decision. *Id.* (internal quotation marks omitted). I must determine whether Dr. Tveite's opinion is material to that decision because, if it is not, the Commissioner's failure to either adopt its findings or reject those findings for specific, legitimate reasons is harmless error. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("[W]e many not reverse an ALJ's decision on account of an error that is harmless.") Evidence is material in a Social Security case if it bears "directly and substantially on the matter in dispute" and if "there is a 'reasonable possibility' that the new evidence would have changed the outcome of the administrative hearing." *Mayes*, 276 F.3d at 462.

In the January 2016 evaluation, Dr. Tveite explained that she had been plaintiff's physician since July 2013, and that she had seen him every three months since that date. She diagnosed "post traumatic osteoarthritis of left hand with limited functionality due to extensive

Page 6 – OPINION AND ORDER

re-attachment procedure in 1982 with tendon repair, carpal tunnel syndrome (severe) with weakness, left lumbar radiculopathy, hepatitis C, diabetes, depression, [and] learning disability[.]" Pl.'s Br. Ex. A at 2 (capitalization and alterations normalized). Dr. Tveite opined that plaintiff could walk less than one block without a rest or significant pain, could sit for only fifteen minutes at a time, could stand for only fifteen minutes at a time, and could sit or stand/walk for zero hours in an eight-hour workday. She further predicted that plaintiff would need a fifteen minute break at least once an hour; could use his hands, fingers, and arms for grasping, turning, fine manipulation, and reaching for zero percent of the workday; and would miss more than four days of work per month due to his impairments. Finally, Dr. Tveite stated that the limitations identified in the evaluation have been present since she began treating plaintiff in July 2013.

The Commissioner argues that the limitations in Dr. Tveite's opinion are inconsistent with her own treatment notes, with plaintiff's other medical records, and with plaintiff's testimony about his activities of daily living. At a minimum, the conclusions the Commissioner urges this Court to draw are not compelled by the record. Dr. Tveite is plaintiff's treating physician. "By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Even when a treating physician's opinion is contradicted by substantial evidence in the record, that opinion is "still entitled to deference and must be weighed using all the factors" provided in the Social Security regulations. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007). Importantly, Dr. Tveite's opinion conflicts with the opinions of the agency reviewing physicians, but not with the opinion of any other treating or examining physician. I find that Dr. Tveite's opinion is material because there is a reasonable possibility that the opinion would have changed

the ALJ's evaluation of plaintiff's RFC as well as the analysis at step five. Remand is appropriate to allow the ALJ to address the conflicts in the medical record in the first instance.

II.  *Plaintiff's Subjective Symptom Statements*

Plaintiff next challenges the ALJ's decision to give little weight to his testimony about the severity of his symptoms. When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Plaintiff testified that he experiences "tingling [in his hands] all the time; like, shooting pain." Tr. 51. The pain is constant and made worse by lifting something too heavy or gripping something for very long. He drops things like pens, pencils, paper, food, and utensils. At the hearing, plaintiff reported that he had experienced the symptoms for four to five years (since 2010 or 2011) and that the symptoms were growing worse over time. Plaintiff also stated that his medications caused dizziness, extreme tiredness, and loose bowels. He testified that he sleeps four to five hours a day, and that his symptoms have been consistent since he was diagnosed with diabetes. In an adult function report completed April 4, 2013 (about a month before the amended disability onset date), plaintiff reported that he was in pain a lot and had

trouble sleeping. Nevertheless, he was able to wash and dry clothes, use a weedeater, and stack firewood. He reported that he had no side effects from any of his medications. He was unable to use his left hand much due to weakness and pain.

The ALJ found that although plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible[.]" Tr. 26. First, the ALJ found plaintiff's testimony about pain and weakness in his hands and fingers inconsistent with his statement that, until roughly July 2014, he continued using a weedeater and stacking firewood. The ALJ concluded that, "[p]er his own testimony, the claimant was not as limited in his functional abilities as alleged, at least not until about July 2014." Tr. 25. The ALJ reasonably found plaintiff's statements that he was able to stack wood and use a weedeater, two activities involving intense use of the fingers and hands, inconsistent with plaintiff's symptom testimony. That inconsistency is a clear, convincing reason to give less weight to plaintiff's statements with respect to the period up to July 2014. *See Molina*, 674 F.3d at 1113 (holding that participation in activities that are inconsistent with claims of totally disabling impairments is an appropriate ground to discredit a claimant's testimony).

The ALJ also found plaintiff's description of his symptoms inconsistent with the medical record. For example, the ALJ found plaintiff's statements that he experiences side effects from his medications and has had constant extreme tiredness incident to his diabetes since his diabetes diagnosis in February 2014 inconsistent with a March 27, 2014 medical record expressly stating that plaintiff reported "no side effects" from his medication and that he was "negative for fatigue." Tr. 481. The ALJ also found plaintiff's report of being a long-time diabetic inconsistent with the fact that he was not diagnosed with diabetes until 2014. Finally, the ALJ

found plaintiff's statements about the severity of pain and weakness in his hands and fingers inconsistent with a 2012 medical note stating that plaintiff reported his numbness and pain were improving and with a 2013 medical note stating that his carpal tunnel pain was "managed as needed with hydrocodone." Tr. 442 (alterations to original). The ALJ rationally found plaintiff's testimony on those points to be incompatible with the medical record. That inconsistency is a clear, convincing reason to discredit plaintiff's symptom testimony.

Plaintiff attempts to explain the inconsistencies by arguing that his carpal tunnel pain worsened after March 2012 and his diabetic neuropathy, though once well-controlled with medication, worsened in April 2015. But at the hearing, plaintiff did not say that his symptoms had been well-controlled and then gotten worse; he reported having problems beginning four to five years before the hearing (earlier than March 2012) and that his condition deteriorated over time. Although the record does not compel the conclusion that plaintiff's hearing testimony was inconsistent with the medical documentation, the ALJ rationally interpreted it in that way.

Finally, the ALJ noted that plaintiff's initial alleged onset date was in September 2008, when he was laid off from work. At the hearing, plaintiff explained that he began looking for a new job at that time but stopped in January 2009 because he was frustrated that nobody wanted to hire him. The ALJ also cited earnings records showing that plaintiff had only two years of income at the substantial gainful employment level in the past fifteen years. The ALJ concluded that "[t]he fact that the claimant reported such easy frustration in a matter of a few months while looking for work, and his poor work history in the prior 15 years, leads the undersigned to question whether his medical conditions are what is preventing him from sustaining gainful employment." Tr. 26. That reason, too, meets the clear and convincing standard. *See Thomas*, 278 F.3d at 959 (holding that the fact that a Social Security disability claimant has shown "little

propensity to work" is a valid factor in assessing how much weight to give to subjective symptom statements).

In sum, the ALJ's decision gave clear, convincing reasons supported by substantial evidence in the record to give little weight to plaintiff's testimony about his symptoms.

III. *Step Two Analysis of Diabetes*

Plaintiff argues that the ALJ erred at step two by failing to classify his diabetic neuropathy as a severe impairment. The step two inquiry is a *de minimis* screening device used to dispose of groundless claims. *Bowen*, 482 U.S. at 153–54. The claimant bears the burden of establishing that he has a severe impairment at step two by providing medical evidence. 20 C.F.R. §§ 404.1512, 416.912. An impairment or combination of impairments is "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on the individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original). Where an ALJ fails to identify a severe impairment at step two, but nonetheless considers at all subsequent steps all of the claimant's impairments, including the erroneously omitted severe impairment, the error at step two is harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

At step two, the ALJ considered medical evidence related to plaintiff's diabetes but concluded the diabetes was not a severe impairment. The ALJ noted that the record first shows a report of pre-diabetes in March 2013, with a diagnosis of diabetes in February 2014. At that point, plaintiff was placed on metformin, and medical records show his glucose has been under good control since. Medical records also show that he reported no side effects from medications. The ALJ found that, soon after his diagnosis, plaintiff learned to control symptoms of his diabetes with "diet, exercise and . . . medications." Tr. 22.

Page 11 – OPINION AND ORDER

Plaintiff concedes that Dr. Tveite reported in March 2014 that his diabetic neuropathy was "well controlled" with medications. Tr. 482. He contends, however, that his symptoms from diabetic neuropathy worsened in April 2015 when he reported pain in his shins. Tr. 500. At that time, Dr. Tveite found "normal sensation" on examination and suggested that plaintiff might benefit from diabetic footwear. Tr. 502–03. By June 2015, he was no longer complaining of shin pain and reported his pain was "stable" with pain primarily in his hands, knees, and elbows. Tr. 505. With respect to diabetic neuropathy, Dr. Tveite wrote that she discussed with plaintiff the importance of regular foot care and reporting increased pain. Tr. 508. The ALJ reasonably found those medical records insufficient to show anything more than a minimal effect on plaintiff's ability to work.

Even if the ALJ erred at step two by failing to list diabetic neuropathy as a severe impairment, that error was harmless. Plaintiff has not explained what additional restrictions the ALJ should have included in the RFC as a result of his diabetic neuropathy, and no such restrictions are apparent from the medical record. The ALJ did not harmfully err at step two.

IV.   *Type of Remand*

In Social Security cases, the Ninth Circuit applies the "credit-as-true" doctrine to determine whether remand should be for further proceedings or for an immediate award of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014). The doctrine has three steps. First, the court must determine whether the Commissioner's decision contains harmful legal error. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Second, the court reviews the record as a whole to determine whether it is fully developed and free from conflicts and ambiguities. *Id.* Finally, if the record has been fully developed "and there are no outstanding issues left to be resolved, the district court must next consider whether 'the ALJ

would be required to find the claimant disabled on remand' if the 'improperly discredited evidence were credited as true.'" *Id.* If so, the district court may remand for an immediate award of benefits. *Id.* But even where all three steps of the credit-as-true test are satisfied, the district court "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" *Id.* at 408.

Here, the first step is satisfied because the Commissioner's decision did not consider the material opinion of Dr. Tveite. The next question is whether the record is fully developed. Dr. Tveite's opinion is in substantial tension with the opinions of the reviewing agency physicians. It is the ALJ's duty to resolve conflicts in the medical evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Although plaintiff is not required to show good cause for failing to submit Dr. Tveite's opinion to the ALJ, that failure undermines his argument that Dr. Tveite's opinion should be credited as true. The Ninth Circuit has stated that one justification for the credit-as-true doctrine is that "[a]llowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails let's play again' system of disability benefits adjudication." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). Here, those fairness concerns are weakened by plaintiff's belated submission of Dr. Tveite's opinion. This is not a case where the ALJ had an opinion before him but either ignored it or rejected it without legally sufficient reason; the ALJ made his initial decision without the benefit of Dr. Tveite's opinion. Remand for further proceedings is the appropriate remedy to permit the ALJ to evaluate that opinion in the first instance.

## CONCLUSION

The Commissioner's decision is REVERSED AND REMANDED for further proceedings and this appeal is dismissed.

IT IS SO ORDERED.

Dated this 23rd day of April 2018.

_____
Ann Aiken
United States District Judge